UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE BISHOP, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 13 C 3378 |
| | ) | |
| MICHAEL LEMKE, Warden, | ) | |
| Stateville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This case comes before the Court on the petition for a writ of habeas corpus filed by petitioner Willie Bishop ("Bishop") pursuant to 28 U.S.C. § 2254 ("Section 2254"). For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

## BACKGROUND

After a jury trial in the Circuit Court of Cook County, Illinois, Bishop was convicted of first degree murder and sentenced to forty years in prison. Bishop is currently incarcerated at the Stateville Correctional Center in Joliet, Illinois, where he is in the custody of the warden of that facility, Defendant Michael Lemke ("Lemke").

Bishop directly appealed his conviction, and on February 9, 2005, the Illinois Appellate Court affirmed his conviction. Bishop unsuccessfully petitioned for

1

rehearing.  Bishop filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, asserting: (i) the trial court had erred in denying his severance motion; (ii) the trial court had improperly restricted petitioner's cross-examination of Tyrice Jones ("Jones"); and (iii) Bishop had been denied a fair trial due to the admission of evidence about his "retaliation" tattoo.  On September 29, 2005, the Illinois Supreme Court denied Bishop's PLA.  On February 21, 2006, the United States Supreme Court denied Bishop's petition for a writ of certiorari.

On March 20, 2006, Bishop filed a pro se post-conviction petition which was superseded by an amended, counseled post-conviction petition on November 15, 2007.  Bishop argued in his amended petition that: (i) he had been denied a fair trial due to the denial of his severance motion; (ii) he had been denied a fair trial due to the admission of evidence about his "retaliation" tattoo; (iii) he had been denied a fair trial due to testimony regarding the May 4th shooting; (iv) he had been denied a fair trial due to testimony regarding his gang affiliation; (v) his trial counsel had been ineffective for having failed to present an alibi defense through Samantha Crump ("Crump"); (vi) his trial counsel had been ineffective for having failed to move to suppress Jones's out-of-court identification of Bishop; (vii) the trial court had improperly restricted cross-examination of Jones; and (viii) the trial court had erred in instructing the jury on the evaluation of eyewitness testimony.  The trial court dismissed all but one of Bishop's claims—it ordered an evidentiary hearing on

Bishop's claim that trial counsel was ineffective for failing to present an alibi defense through Crump.

At the evidentiary hearing, Bishop testified that on the night of the murder, June 26, 1998, he had been with his girlfriend, Crump, at the apartment they shared together. On June 28, 1998, Bishop learned that police were looking for him in connection with the murder and left for Bloomington, Illinois. He was arrested in October 1999. Crump did not testify at the hearing because she was incarcerated in Wisconsin for first degree murder, but she did submit an affidavit that stated she had been present at Bishop's trial, but had not been called as a witness. The former Assistant State's Attorney on the case testified that Bishop's trial counsel had told him that he was going to call Crump as an alibi witness, but once the trial began, Crump was unable to be located at the various addresses given by Bishop to the authorities. Bishop's trial counsel testified that he remembered Bishop's having informed him that he wanted to use Crump as an alibi witness and that he had investigated her to determine if she could be a viable alibi witness. He testified that he had spoken with Crump in court about being an alibi witness and that he had taken down her contact information, but had been unable to locate her at the time of trial. Bishop then testified that Crump had been present at his trial and that his counsel had never told him that he had been unable to locate her.

After the hearing, the court held that Bishop failed to establish that his trial counsel's performance had been deficient or that Bishop had been prejudiced by the

failure to call Crump. The court found that Bishop's representation did not fall below an objective standard of reasonableness because Bishop's trial counsel had challenged the identification of the sole eyewitness in the case, and Bishop could not establish prejudice. Post-conviction relief was denied. Bishop appealed, claiming: (i) his trial counsel had been ineffective for having failed to call Crump; and (ii) post-conviction counsel had provided unreasonable assistance for having failed to amend Bishop's post-conviction petition to include a claim that appellate counsel had been ineffective for not having raised certain claims on direct appeal. The Illinois Appellate Court affirmed, and Bishop filed a petition for rehearing. The Illinois Appellate Court issued a modified opinion on denial of rehearing. Bishop filed a PLA in the Illinois Supreme Court again claiming that: (i) trial counsel had been ineffective for having failed to call Crump; and (ii) post-conviction counsel had provided unreasonable assistance for having failed to allege a claim of ineffective assistance of appellate counsel. On May 30, 2012, the Illinois Supreme Court denied Bishop's PLA. Bishop did not file a writ of certiorari with the United States Supreme Court.

On March 23, 2007, Bishop filed his first federal habeas petition pursuant to Section 2254. However, since Bishop's post-conviction petition remained pending in the state trial court, it was dismissed without prejudice by this Court for failure to exhaust state remedies. After fully exhausting his state remedies, Bishop timely filed this federal habeas petition on May 5, 2013 pursuant to Section 2254.

**DISCUSSION**

Bishop raises eight arguments in his habeas petition: (i) trial counsel was ineffective for failing to present Crump's testimony ("Claim One"); (ii) Bishop was denied a fair trial due to the denial of his severance motion ("Claim Two"); (iii) Bishop was denied a fair trial because the trial court admitted evidence about his "retaliation" tattoo ("Claim Three"); (iv) Bishop was denied a fair trial because of the admission of evidence about the May 4th shooting ("Claim Four"); (v) Bishop was denied a fair trial due to the testimony about his gang affiliation ("Claim Five"); (vi) Bishop was denied due process and his confrontation right when he was denied leave to cross-examine Jones about certain arrests and convictions ("Claim Six"); (vii) Bishop was denied a fair trial because the trial court failed to properly instruct the jury as to the evaluation of eyewitness testimony ("Claim Seven"); and (viii) Bishop's appellate counsel on direct appeal was ineffective for failing to raise Claims Two, Three, Four, Five and Seven before the Illinois Appellate Court and the Illinois Supreme Court ("Claim Eight").

**I. Claim One—Ineffective Assistance of Trial Counsel**

In Claim One, Bishop argues that his trial counsel was ineffective for failing to present Crump's testimony as an alibi defense in violation of *Strickland v. Washington*, 466 U.S. 668 (1984). Bishop fully presented this claim in his state post-conviction petition and appeal. After the post-conviction evidentiary hearing, the Illinois Appellate Court rejected his argument on the merits, finding that Bishop could

not satisfy either prong of *Strickland*. Irrespective of the trial court's findings at the post-conviction evidentiary hearing, Bishop states in his habeas petition that trial counsel's failure to call Crump was objectively unreasonable because he claims Crump was available to testify, contrary to the assertions of Bishop's trial counsel and state investigators that they were unable to locate Crump during the trial. He claims his trial counsel should have subpoenaed Crump's appearance or asked for a continuance. Lemke relies on the Illinois Appellate Court's conclusion that Bishop failed to satisfy either prong of *Strickland* when presenting his arguments at the evidentiary hearing to refute Claim One.

Bishop must demonstrate that the Illinois Appellate Court's adjudication of this claim was an unreasonable application of *Strickland*. Under *Strickland*, to establish an ineffective assistance of counsel claim, Bishop must show that: (i) his counsel's performance fell below an objective standard of reasonableness; and (ii) he suffered substantial prejudice as a result. *See* 466 U.S. at 674. With regard to the first prong, the Illinois Appellate Court concluded that Bishop had failed to meet the performance prong because his trial counsel had spoken with Crump as a possible alibi witness, but both defense and state investigators had been unable to locate her. Also, the Illinois Appellate Court found that Bishop's trial counsel had presented a challenging defense by questioning the identification of the sole eyewitness in the case, therefore reiterating that Bishop's trial counsel had not performed deficiently. The Illinois Appellate Court found that Bishop had failed to meet his burden of establishing

substantial prejudice under the second prong of *Strickland* because the eyewitness testimony against Bishop at trial had been strong, and Crump's credibility as a witness would have most certainly been attacked when impeached.

Upon review of the record, this Court holds that Bishop has failed to establish that the Illinois Appellate Court's rejection of his claim of ineffective assistance of trial counsel was an unreasonable application of *Strickland*. The record reflects that Bishop's trial counsel did interview and identify Crump as a possible alibi witness to the state before the trial commenced. During the post-conviction hearing on this claim, it was clearly determined that there had been multiple attempts to locate Crump to testify as an alibi witness, but the defense investigators, as well as state investigators, had been unable to locate her. There is no evidence that a continuance would have been effective because Crump's whereabouts were unknown at that point in time. Also, even if a subpoena had been issued mandating Crump's presence, this Court acknowledges that a trial counsel's tactical decision not to present an alibi witness does not fall below an objective standard for reasonableness. *See Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012) ("To avoid the inevitable temptation to evaluate a lawyer's performance through the distorting lens of hindsight, *Strickland* establishes a deferential presumption that strategic judgments made by defense counsel are reasonable.").

In his reply, Bishop cites to *Stitts v. Wilson*, 713 F.3d 887 (7th Cir. 2013), as support for Claim One. In *Stitts*, the Seventh Circuit reversed the district court's

7

denial of the petitioner's claim that his trial counsel had been ineffective for having failed to call alibi witnesses at trial. *Id*. at 888. The Seventh Circuit found that, because the petitioner claimed to have been at a nightclub at the time the crime had been committed, his trial counsel should have interviewed the number of potential alibi witnesses who had been at the nightclub instead of only interviewing the petitioner's father. Due to trial counsel's limited investigation of potential alibi witnesses, the court held that trial counsel's performance under *Strickland* had fallen below an objective standard for reasonableness. *Id*. at 894. The court's reversal focused on the trial counsel's *investigation* of an alibi defense, not the decision to refrain from presenting an alibi witness at trial. *Id*. at 892.

In the instant case, by contrast, Bishop's trial counsel properly investigated an alibi defense when he interviewed and disclosed Crump as a possible alibi witness. Bishop claimed that he only had been with Crump at the time of the shooting. Unlike the petitioner in *Stitts*, Bishop's alibi was not at a public place, like a nightclub, where potential alibi witnesses would be numerous. Therefore, this Court finds that Bishop's trial counsel completed a full investigation of alibi witnesses prior to trial, and *Stitts* is inapposite.

Having adjudicated that the performance of Bishop's trial counsel did not fall below an objective standard of reasonableness, the Court need not address whether Bishop suffered substantial prejudice as a result. This Court concludes that the

Illinois Appellate Court's determination was correct and finds that Bishop is not entitled to habeas relief on this claim.

## II. Claims Two, Three and Six

### A. Claim Two—Severance

In Claim Two, Bishop argues that by the trial court's denying his severance motion, he was so prejudiced that his due process right to a fair trial was violated. Under Section 2254, Bishop is entitled to habeas relief if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite of ours." *Id.* at 405.

A trial judge has discretion to determine whether a multi-defendant trial should be severed. *See Madyun v. Young*, 852 F.2d 1029, 1034 (7th Cir. 1988). A court will grant habeas relief only if there is an abuse of discretion and where refusal to sever resulted in a trial that was fundamentally unfair. *Id.* at 1034. Joint trials are fundamentally unfair if co-defendants present mutually antagonistic defenses or if the actual conduct of the defense of one defendant prejudices that of another. *Id.*

9

In the instant case, Bishop claims that severance was appropriate because: (i) the evidence against his co-defendant was stronger than that against him; and (ii) they had mutually antagonistic defenses which prejudiced him. However, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). The Illinois Appellate Court found that Bishop and his co-defendant had not had antagonistic defenses because both had claimed that the eyewitness accounts had been unreliable. Nothing in Bishop's petition convinces this Court that his co-defendant's defense was so antagonistic to him to categorize Bishop's trial as fundamentally unfair.

Additionally, the Supreme Court has no clearly established precedent which states that the Constitution requires severance of co-defendants' trials. In the absence of such a holding, this Court cannot find that the state court's decision was contrary to or an unreasonable application of clearly established federal law, and Claim Two thus fails.

### B. Claim Three—Retaliation Tattoo

Bishop asserts in Claim Three that he was denied a fair trial because jurors learned he had a tattoo with the words "retaliation is a must" and images of two smoking guns next to a cloud of smoke. A federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Therefore, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran,* 131 S. Ct. 13, 16 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Issues regarding the admissibility of evidence are matters of state law. *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994). To obtain relief for the improper admission of evidence, Bishop must show that the error of revealing to the jury the nature of his tattoo was so severe that it denied him due process. *See Estelle*, 502 U.S. at 72.

Bishop claims that allowing the photograph of his tattoo to be sent back with the jury was an abuse of discretion on the part of the trial court. He posits that the admission of his tattoo made the jury believe Bishop acted in conformity with the words and symbols on his tattoo and consequently, inflamed their prejudices. Lemke argues that the tattoo was only admitted as evidence of motive and had no significant role in the trial. The Illinois Appellate Court held that motive had been established by other pieces of evidence and that the admission of evidence regarding Bishop's tattoo had been too minor to cause it to reverse the trial court's decision.

This Court's obligation is to assess whether the admission of Bishop's tattoo was so severe that it deprived him of a fair trial. The evidence of Bishop's tattoo did not go so far as to cause fundamental unfairness and deprive him of his constitutional due process rights. The trial court, in its discretion, allowed the jury to learn about the tattoo as evidence of motive and did not deprive Bishop of a fundamental right by doing so because Bishop's tattoo was not the only evidence of motive the jury heard.

Nothing in the record indicates that the state prosecutors' intention was to show the jury that Bishop had acted in conformity with the apparent meaning behind his tattoo. Therefore, the trial court committed no error in admitting the tattoo and did not deprive Bishop of a fundamentally fair trial. Claim Three is denied.

### C. Claim Six—Right to Confrontation

Bishop alleges that he was denied due process and his Sixth Amendment confrontation right when the trial court denied him leave to cross-examine an eyewitness about certain arrests and convictions. Lemke argues that the trial court's ruling merely restricted Bishop's cross-examination of the eyewitness on a collateral issue.

In order to obtain relief, Bishop must show that there is a clearly established Supreme Court precedent addressing this issue, and that the state court's decision was contrary to or an unreasonable application of that precedent. *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006). The Supreme Court has held that trial courts have wide discretion to limit cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). As long as the trial court does not curtail cross-examination to the point that the defendant is unable to expose the witness's bias and motivation to lie, the reasonable limitations imposed by the court do not rise to the level of a Sixth Amendment violation. *Id*. at 678-79. If the defendant is given sufficient opportunity "to expose a motive to lie, it is of peripheral concern to the Sixth Amendment how

much opportunity defense counsel gets to hammer that point home to the jury." *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir. 1994).

The Illinois Appellate Court found that the trial court had not erred when limiting which prior convictions and arrests Bishop's counsel could use to cross-examine the eye-witness. During the trial, Bishop was allowed to cross-examine the eyewitness on two prior narcotics convictions and one arrest for aggravated battery that resulted in no charge because the trial court reasoned that his narcotics arrest gave him a possible motive to lie in exchange for favorable treatment from the prosecutors in that case. The Illinois Appellate Court recognized that the trial court had exercised sound discretion when allowing these prior convictions and arrests to be allowed into evidence, but reasoned that other convictions and arrests Bishop's trial counsel had wanted to use to cross-examine were not admissible merely to impeach the witness's credibility. This Court agrees. Given the fact that the trial court intelligently sifted through which prior arrests and convictions were relevant for Bishop's attorney to use on cross-examination, it was reasonable for the Illinois Appellate Court to find that the jury had heard sufficient evidence to evaluate the eye-witness's bias and motive. The cross-examination of the two prior narcotics convictions and the arrest for aggravated battery that resulted in no charge sufficiently exposed any motive to lie that the eye-witness may have felt to the jury. Because the Illinois Appellate Court's rejection of Bishop's claim that his confrontation right was violated is neither contrary

to nor an unreasonable application of Supreme Court precedent, Bishop is not entitled to habeas relief on this basis.

### III. Claims Four, Five, Seven and Eight

#### A. Procedural Default

A petitioner must present his claims to all levels of the Illinois courts to avoid procedural default. To fairly present a claim to the Illinois Supreme Court, a petitioner must set it forth in his PLA and cannot direct the court to review other documents in the record. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004). At each level of state review, a petitioner must provide operative facts and legal principles that control each claim to the state courts. *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). According to Lemke, Bishop failed to exhaust Claims Four, Five, Seven and Eight. Therefore, this Court must assess whether Bishop presented Claims Four, Five, Seven and Eight to the state trial court, the Illinois Appellate Court, and the Illinois Supreme Court in either his direct or state collateral proceedings.

##### 1. Claims Four and Five

Bishop avers that he was denied a fair trial because evidence about his gang affiliation and the May 4, 1998 shooting were revealed to the jury. Lemke argues that Bishop's contentions are procedurally defaulted because Bishop failed to properly present these claims to the Illinois Supreme Court on direct appeal. In his direct appeal PLA, Bishop made three specific claims: (i) the trial court had erred in denying his severance motion; (ii) the trial court had improperly restricted his cross-

examination of Jones; and (iii) he had been denied a fair trial due to the admission of evidence about his tattoo. Bishop did mention in his PLA papers that he had been denied federal due process "by the 'mini-trial' and irrelevant parade of other crimes evidence at his trial" and "by improper admission of gang evidence and a gang expert." However, these vague references in his PLA (now titled as Claims Four and Five in his habeas petition) lacked any supportive operative facts or legal principles that would have helped guide the Illinois Supreme Court in making a full and fair assessment of Bishop's claims. *See Chambers v. McCaughtry*, 264 F.3d 732, 739 (7th Cir. 2001) (a "passing reference" to a constitutional right does not fairly present a claim). Accordingly, Claims Four and Five are procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (failure to present claim to state's highest court means it is procedurally barred).

### 2. Claims Seven and Eight

Bishop also argues that he was denied a fair trial because the trial court failed to properly instruct the jury as to the evaluation of eyewitness testimony and that his appellate counsel on direct appeal was ineffective for failing to raise Claims Two, Three, Four, Five and Seven before the Illinois Appellate Court and the Illinois Supreme Court. Lemke asserts that Claim Seven is procedurally defaulted because Bishop admits he did not include this claim in his PLA on direct appeal, did not preserve it on post-conviction review, and did not raise it before the Illinois Appellate Court. Lemke also argues that Claim Eight should be deemed to have been

procedurally defaulted because Bishop concedes that he never presented his ineffective assistance of appellate counsel claim in his post-conviction petition. Moreover, Lemke avers that Bishop's appellate counsel was, in fact, effective, by raising Claims Two and Three before the Illinois Appellate Court and the Illinois Supreme Court and including Claims Four, Five and Seven in Bishop's appellate briefs. This Court agrees that Bishop failed to raise Claims Seven and Eight through one complete round of state court review, and they are thus procedurally defaulted.

### B. Exceptions to Procedural Default

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In his petition papers, Bishop tries to establish that he should be excused from these procedural defaults based on the two exceptions to default, cause and prejudice and the miscarriage of justice.

#### 1. Cause and Prejudice

The cause and prejudice exception applies when "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 n. 24 (1999). For Claims Four, Five and Seven, Bishop does not argue that some objective factor prevented him from properly following Illinois's procedural rules. The record is also devoid of any

objective factor that caused Bishop's default.  Therefore, Bishop cannot establish cause with respect to Claims Four, Five and Seven and the Court declines to address prejudice.  *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010).

For Claim Eight, Bishop maintains that his procedural default should be excused by the exception articulated in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). This Court recognizes that the United States Supreme Court has established a "narrow exception" to the general rule that ineffective assistance of counsel during initial-review collateral proceedings cannot establish "cause" for the default of an ineffective assistance of trial counsel claim.  *Id.* at 1315.  Recently, *Martinez* has been expanded "to states which theoretically permit a criminal defendant to raise ineffective assistance on direct appeal, but place procedural impediments in the way so that, in practice, a criminal defendant is only able to raise it on collateral review." *Kirkpatrick v. Lambert*, 12 C 50400, 2013 WL 5477567, at *6 (N.D. Ill. Oct. 2, 2013) (citing *Trevino v. Thaler*, 133 S. Ct. 1911, 1915 (2013)).  However, other courts in this district have held that *Martinez* does not apply to habeas petitions of criminal cases in Illinois, notwithstanding *Trevino*, since a petitioner in Illinois is not limited to raising an ineffective assistance of counsel claim in collateral proceedings.  *See Diaz v. Pfister*, 12 C 286, 2013 WL 4782065 (N.D. Ill. Sept. 4, 2013).  For these reasons, *Martinez* does not excuse Bishop's procedural default regarding Claim Eight.

## 2. Fundamental Miscarriage of Justice

The fundamental miscarriage of justice exception applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). To show actual innocence, a petitioner must present "new, reliable evidence of his innocence" so convincing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup*, 513 U.S. at 329). Bishop has failed to invoke any new evidence of his actual innocence in his petition or in his state court pleadings. *See Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) ("To support a colorable claim of actual innocence, the petitioner must come forward with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.") (internal quotation marks omitted). This Court is not persuaded that Crump's alibi testimony should be considered a new, trustworthy eyewitness account not presented at trial as explained above in Part I, *supra*. Therefore, the cause and prejudice and fundamental miscarriage of justice exceptions fail to salvage Claims Four, Five, Seven and Eight from procedural default.

## IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should be issued. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2)[t]he certificate must identify each substantial constitutional question; (3)[i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4)[a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5)[i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

Based on the reasons stated in this order, Bishop has not established "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition adequately shows a sufficient change of the denial of a constitutional right that he deserves encouragement to

19

proceed further." *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Therefore, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies Bishop's petition for a writ of habeas corpus and declines to issue a certificate of appealability.

Date: December 12, 2013

District Judge Charles P. Kocoras